UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 20-14303-CIV-CANNON/Maynard

THEODORE KEITH GRIFFIN,

    Plaintiff,
v.

OFFICER THOMAS MCGUIRE,
OFFICER KERN DIEUDONNE,
MIAMI-DADE COUNTY,
BROWARD COUNTY,
MIAMI-DADE POLICE DEPARTMENT,
OFFICER PAUL SCHEEL,
and OFFICER ALEJANDRO FALCON,

    Defendants.
_____/

## ORDER ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND DISMISSING COMPLAINT

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") [ECF No. 64]. On August 17, 2022, following a referral order [ECF No. 55], Judge Maynard issued a report ("the Report") recommending that Defendants' Motion to Dismiss be granted in part and denied in part [ECF No. 78]. Judge Maynard recommends that Counts I, IV, V, VI, VII and VIII of the SAC be dismissed with prejudice, and that Defendants Miami-Dade County, Broward County, and the Miami-Dade Police Department be dismissed from this action [ECF No. 78 p. 23]. As to Counts II and III, Judge Maynard recommends that such counts be allowed to proceed as to Officers Thomas McGuire, Paul Scheel, Alejandro Falcon, and Kern Dieudonne (collectively the "Officer Defendants") [ECF No. 78 p. 23]. Defendant Dieudonne timely filed Objections to the Report [ECF No. 79], arguing that Counts II and III should be dismissed in their entirety. The remaining officer defendants

subsequently joined his objections (hereinafter "Defendant-Officer Objections") [ECF No. 80]. Plaintiff did not file objections of his own and did not respond to the Defendant-Officer Objections.

The Court has reviewed the Report [ECF No. 78], the Defendant-Officer Objections [ECF No. 79], and the full record. For the reasons set forth below, the Court agrees with the Objections as to Count II and therefore dismisses Count II. With respect to Count III, the Court agrees with the Report that it should be permitted to proceed as follows; accepting the SAC as true, Plaintiff plausibly alleges that Officers Dieudonne and McGuire deprived Plaintiff of his clearly established federal constitutional right to a judicial probable cause hearing within 48 hours of his warrantless arrest. The Court further determines that the remainder of Judge Maynard's report is well-reasoned and correct. Accordingly, the Report [ECF No. 78] is **ACCEPTED IN PART AND REJECTED IN PART** as set forth below.

## RELEVANT BACKGROUND

On August 31, 2020, Plaintiff initiated this action by filing a one count Section 1983 claim for false imprisonment against Officers Thomas McGuire and Kern Dieudonne only [ECF No. 1]. Officers McGuire and Dieudonne filed a Motion to Dismiss [ECF No. 19], and in response, Plaintiff amended his Complaint, adding eight counts and naming Defendants Miami Dade County, Broward County, Miami Dade Police Department, and the Hollywood Police Department as additional Defendants [ECF No. 23]. After the matter was reassigned to the undersigned [ECF No. 30], the Court granted Plaintiff leave to file a Second Amended Complaint (the "SAC") by December 14, 2020 [ECF No. 32]. Plaintiff then filed an untimely SAC [ECF No. 34], which the Court nevertheless accepted as the operative complaint [ECF No. 44]. In the SAC, Plaintiff names Officers McGuire, Dieudonne, Paul Scheel, and Alejandro Falcon, Miami-Dade County, Broward County, the Hollywood Police Department, and the Miami Dade Police Department as

Defendants [ECF No. 34]. The Court thereafter dismissed Hollywood Police Department as a Defendant because Plaintiff failed to perfect service of process on Hollywood Police Department within the time authorized by the Court's extension to the Rule 4(m) deadline [ECF No. 66].

The SAC brings the following eight claims arising out of Plaintiff's arrest on August 24, 2018:

- Count I – "Deprivation of the Privileges of Free Speech and Peaceable Assembly" (Against Defendants McGuire, Scheel, and Falcon) [ECF No. 34 ¶¶ 1–3];

- Count II – "The Right of People to be Free from the Use of Excessive Force During Arrest" (Against Defendants McGuire, Scheel, Falcon, and Dieudonne) [ECF No. 34 ¶¶ 4–6];

- Count III – "False Imprisonment" (Against Defendants Miami-Dade County, Broward County, Miami-Dade Police Department, McGuire, and Dieudonne) [ECF No. 34 ¶¶ 7–9];

- Count IV – "Assault" (Against Defendants McGuire and Dieudonne) [ECF No. 34 ¶¶ 10–12];

- Count V – "Violation of Fifth and Fourteenth Amendment Right to Not Be Deprived of Liberty Without Due Process of Law" (Against Defendants Miami-Dade County, Broward County, Miami-Dade Police Department, McGuire, and Dieudonne) [ECF No. 34 ¶¶ 13–15];

- Count VI – "Violation of the Florida and United States Constitutions" (Against Defendants Miami-Dade County, Broward County, Miami-Dade Police Department, McGuire, Dieudonne) [ECF No. 34 ¶¶ 16–18];

- Count VII – "Denial of Bail" (Against Defendants Miami-Dade County, Broward County, Miami-Dade Police Department, McGuire, Dieudonne) [ECF No. 34 ¶¶ 19–21];

- Count VIII – "Violation of State Constitution Right to Enjoy Life and Liberty and to Pursue and Obtain Happiness and Safety" (Against Defendants McGuire, Scheel, and Falcon) [ECF No. 34 ¶¶ 22-24].

According to the SAC, on August 24, 2018, three police officers were dispatched to a convenience store in Hollywood, Florida, in response to an incident involving a white male attempting to cash a stolen check [ECF No. 34 p. 2]. Plaintiff, a black male, was sitting in a legally parked car with the ignition running at the convenience store when the officers, dressed in camouflage, approached Plaintiff's vehicle [ECF No. 34 p. 2]. One of the officers banged on

Plaintiff's window, pointed a gun at Plaintiff, and ordered Plaintiff to open the door [ECF No. 34 p. 2]. Because the officers were wearing camouflage, Plaintiff believed that the officers were either attempting to rob him or carjack his vehicle [ECF No. 34 p. 2]. Plaintiff put his car in reverse and fled from the parking lot [ECF No. 34 p. 2]. Once Plaintiff finally pulled over in Miami, Florida, Plaintiff alleges that he "was snatched through the window of his car, injuring his neck and back; and held down on the hot pavement for at least five minutes, causing third-degree burns on his body" [ECF No. 34 pp. 2–3]. Plaintiff alleges that he was then "booked on a no bond warrant, for six days, until August 30, 2018," when he was finally taken before a judicial officer in Broward County for a probable cause hearing [ECF No. 34 p. 3].

The Court takes judicial notice of the fact that Plaintiff is currently awaiting trial on six felony charges arising out of the incident, including two counts of Aggravated Battery on a Law Enforcement Officer and one count of Aggravated Fleeing/Eluding at High Speed [ECF No. 64-1 p. 3].[1] Plaintiff pled not guilty to these charges, but there is a current arrest warrant against Plaintiff for violating his pre-trial release, and Plaintiff's whereabouts are unknown. *See generally State of Florida v. Theodore K. Griffin*, Case No. 18010595CF10A (Fla. Broward County Ct.).

Defendants filed the instant Motion to Dismiss arguing, *inter alia*, that Plaintiff fails to state a claim on which relief can be granted and that the Officer Defendants are entitled to qualified immunity and/or sovereign immunity on all counts [ECF No. 64]. The Report recommends that the Miami-Police Department be dismissed from this action because it is not an entity subject to suit by the laws of the State of Florida [ECF No. 78]. The Report also recommends that Broward

---

[1] "A court may take judicial notice of matters of public record, including arrest warrants, and consider those facts in resolving a motion to dismiss." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1341 (M.D. Fla. 2017) (citing *McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (affirming a district court's decision to take judicial notice of the docket in the underlying criminal case)).

County and Miami-Dade County be dismissed from this action because Plaintiff did not allege that his constitutional rights were violated pursuant to an official policy or custom of these counties as required by Section 1983 and binding case law [ECF No. 78 p. 6]. *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). And the Report determines that Counts I, IV, V, VI, VII, and VIII fail to state a claim on which relief can be granted and recommended those counts be dismissed with prejudice [ECF No. 78 pp. 8, 18–23].

As to Count II, the Report recasts Plaintiff's excessive force claim as an unlawful arrest claim and determines that the Officer Defendants are not entitled to qualified immunity because "a reasonable officer would know that detaining a person by a show of force—pointing a gun at them—when the person is doing no more than sitting in their legally parked car, violates the person's clearly established constitutional rights" [ECF No. 78 pp. 8–13]. Thus, the Report determines that "the benefit of discovery is needed to determine qualified immunity," because despite being titled as an "excessive force claim, Count II states a claim for unlawful arrest" [ECF No. 78 p. 13].

With respect to Count III, the Report rejects Defendants' argument that Plaintiff improperly lumps together both a state and federal claim for false imprisonment under this count [ECF No. 78 p. 14]. In rejecting this argument, the Report determines that, because Plaintiff is proceeding pro se, the Court should analyze the facts as alleged to determine if Plaintiff states a claim for false imprisonment under either the federal or Florida standard [ECF No. 78 p. 14]. The Report ultimately concludes that, to the extent Count III alleges a federal false imprisonment claim, Plaintiff states a viable cause of action for a violation of the Fourth Amendment's right to a judicial probable cause hearing within 48 hours of a warrantless arrest [ECF No. 78 pp. 14–16]. To the extent that Count III alleges a Florida false imprisonment claim, the Report also determines that

"sovereign immunity does not shield the individual officers from [Plaintiff's] false imprisonment claim," because "there is no way to read [Plaintiff's] allegations except that he was held without a prompt judicial determination of probable cause in wanton and willful disregard to his rights" [ECF No. 78 pp. 17–18]. Finally, the Report concludes that probable cause does not bar Plaintiff's false imprisonment claim in light of the absence of a warrant and the alleged lack of a prompt hearing [ECF No. 78 p. 18].

Officer Dieudonne filed timely objections to the Report [ECF No. 79]. He argues that the Report "erroneously reformulates" Count II—an excessive force claim—into a claim of false arrest based on lack of probable cause and then improperly determines that the Officer Defendants are not entitled to qualified immunity on Count II [ECF No. 79]. On Count III, he argues that even if it states a claim for false imprisonment as the Report determines, the Report failed to properly conduct a qualified immunity analysis for any such claim. Defendants Scheel and Falcon adopt Defendant Dieudonne's objections as to Count II [ECF No. 80]. Defendant McGuire adopts Defendant Dieudonne's objections as to Counts II and III [ECF No. 80]. Plaintiff did not file any objections of his own or respond to the objections. The Report is ripe for adjudication.

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report,

the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

Although the Court agrees with the Report's well-reasoned determinations as to Counts I, IV, V, VI, VII, and VIII, and its determination that Count III alleges a claim for false imprisonment in violation of the Fourth Amendment, the Court sustains the officers' objection to the Report's evaluation of Count II and accordingly dismisses the excessive force claim alleged in Count II. Additionally, with respect to Count III, the Court determines that Officers Dieudonne and McGuire are not entitled to qualified immunity at this juncture because the facts alleged, accepted as true, plausibly establish that these officers violated Plaintiff's clearly established right to a judicial probable cause hearing within 48-hours of his warrantless arrest. Accordingly, the Court overrules the officers' objections with respect to Count III and agrees with the Report's recommendation to permit that federal claim to proceed.

**I.    Count II**

Count II, described in the SAC as "THE RIGHT OF THE PEOPLE TO BE FREE FROM THE USE OF EXCESSIVE FORCE DURING ARREST," alleges that Officers McGuire, Scheel, Falcon, and Dieudonne used excessive force in violation of the Fourth Amendment when they "snatched the plaintiff through the window of his car, slamm[ed] him to the ground, injur[ed] his neck and back; and [held] him down on the hot pavement for five minutes, causing third-degree burns to his body" [ECF No. 34 p. 5 & ¶¶ 4–5]. Although the allegations in Count II concern excessive force only, and although the SAC does not otherwise allege a false arrest claim, the

7

Report construes Count II as an unlawful arrest claim on the ground that officers lacked probable cause to approach Plaintiff in the first instance while he was sitting in his car at the convenience store [ECF No. 78 pp. 8–13]. Having characterized Count II as such, the Report determines that officers illegally seized Plaintiff in violation of the Fourth Amendment when they pointed a gun at him and instructed him to open the door [ECF No. 78 p. 12]. Defendants object to this reinterpretation of Count II and argue that they are entitled to qualified immunity on the claim that was pled—excessive force during arrest [ECF No. 79 pp. 3–11]. The Court agrees with Defendants. Count II as pled is an excessive force claim; the Officer Defendants are entitled to qualified immunity on that claim; and even if Count II did warrant reformulation as an unlawful arrest claim, such a claim would fail on the pled facts because Plaintiff was not seized within the meaning of the Fourth Amendment until he pulled over in Miami and was arrested. As a final matter, and as explained below, even if Count II stated a claim for unlawful arrest, the Court would abstain from considering such a claim in accordance with *Younger v. Harris*, 401 U.S. 37 (1971), because Plaintiff still faces criminal charges in Florida state court related to his arrest.

**A.      Count II Alleges an Excessive Force Claim**

As a *pro se* litigant, Plaintiff's pleadings are held to a less stringent standard than those drafted by attorneys and thus are to be liberally construed. *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). However, liberal construction of *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). *See also Risk v. Internal Revenue Serv.*, No. 18-CIV-61300-Altonaga, 2018 WL 34233967, at *2 (S.D. Fla. June 15, 2018) (noting that "'Courts are not required to aid *pro se*

8

litigants in setting forth legally cognizable claims.'") (brackets omitted) (quoting *Williams v. Donald*, No. 08-CV-57, 2009 WL 2589595, at *4 (M.D. Ga., Aug. 19, 2009)).

The Report incorrectly reformulates Count II, pled as a claim of excessive force during arrest, into an unlawful arrest claim based on allegations not present in Count II [*see* ECF No. 34 ¶¶ 4–6]. As pled, Count II refers to events subsequent to the high-speed chase and Plaintiff pulling his vehicle over in Miami. Specifically, in the single substantive paragraph relevant to Count II, Plaintiff alleges that the Officer Defendants "snatched [Plaintiff] through the window of his car, slamm[ed] him to the ground, injur[ed] his neck and back, and [held] him down on the hot pavement for five minutes, causing third-degree burns on [Plaintiff's] body" [ECF No. 34 ¶ 5]. Such conduct, Plaintiff alleges, "deprived [Plaintiff] of his right to be free from the use of excessive force during arrest, under the Fourth Amendment to the Constitution of the United States" [ECF No. 34 ¶ 5]. There are no facts in Count II related to the preceding episode in the parking lot when officers approached Plaintiff initially. And importantly, none of the counts in the SAC asserts an unlawful arrest claim such that Plaintiff's excessive force claim arguably could be subsumed within such a theory. *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) ("Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."). Indeed, the SAC does not make any allegation that Plaintiff was unlawfully arrested or that Plaintiff was unlawfully arrested when the officers approached him in the convenience store parking lot [*see* ECF No. 34].

For these reasons, Count II of the SAC alleges an excessive force claim, not an unlawful arrest claim. The Court rejects the Report's reformulation of Count II.

### B. The Officer Defendants are Entitled to Qualified Immunity on Count II

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-part analysis to a government official's assertion of qualified immunity. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Id.* "After the officers makes this showing . . . the burden shifts to the plaintiff to show that (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1251, 1264 (11th Cir. 2016)). Courts "may consider these two prongs in either order, and a public official is entitled to qualified immunity if the plaintiff fails to establish either one." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016) (citing *Pearson* 555 U.S. at 236). In determining whether a right is clearly established, federal district courts in Florida look to decisions of the United States Supreme Court, the Eleventh Circuit, and the Florida Supreme Court. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). And in the excessive force context, "[a] determination that an officer used excessive force 'requires careful attention to the facts and circumstances of each particular case' while 'recognizing that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Ingram v. Kubik*, 30 F.4th 1241, 1251 (11th Cir. 2022), *cert. dismissed*, 142 S. Ct. 2855 (2022) (brackets omitted and ellipses in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, as the Report accurately points out, "there is no dispute that the Defendant officers were acting in their discretionary authority" [ECF No. 78 p. 10].  The SAC alleges that the officers "were dispatched . . . in reference to a white male attempting to cash a stolen check" [ECF No. 34 p. 2].  And Plaintiff acknowledges that the officers were conducting functions associated with their roles as dispatched police officers [ECF No. 34 p. 2].  The burden thus falls on Plaintiff to show that the Officer Defendants violated Plaintiff's clearly established constitutional rights by using excessive force when they arrested him.

In his Response in Opposition to Defendants' Motion to Dismiss, Plaintiff fails to cite to any case law—let alone U.S. Supreme Court or Eleventh Circuit precedent—indicating that the Officer Defendants violated Plaintiff's clearly established constitutional rights on the facts alleged [*see* ECF No. 73].  Nor does the Court's review of Eleventh Circuit authority indicate otherwise, as explored below.

Turning to Plaintiff's most serious allegation—that the Officer Defendants held Plaintiff down on the hot pavement for five minutes, resulting in Plaintiff suffering third-degree burns—available Eleventh Circuit persuasive authority does not support a violation of clearly established law on the facts alleged.  In *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665 (11th Cir. 2016), the Eleventh Circuit determined that officers did not violate clearly established law when restraining a suspect on hot pavement, because "[n]ot every reasonable officer would have known that the pavement was hot enough to cause injurious burns, and the complaint provides no indication that [the plaintiff] informed any of the officers that the pavement was burning him." *Id.* at 670.  Similarly, in *Rubio v. Lopez*, 445 F. App'x 170 (11th Cir. 2011), the Eleventh Circuit held that "it is not clearly established that the Fourth Amendment requires an officer to stop restraining a[n] [] arrestee on the hot pavement when he complains of being burned and resume the restraining

11

Case 2:20-cv-14303-AMC   Document 83   Entered on FLSD Docket 06/22/2023   Page 12 of 18

CASE NO. 20-14303-CIV-CANNON/Maynard

process on a cooler surface." *Id.* at 174.  Returning to the allegations in this case, Count II alleges that officers "snatched the plaintiff through the window of his car, slamming him to the ground, injuring his neck and back; and holding him down on the hot pavement for five minutes, causing third-degree burns on his body" [ECF No. 34 ¶ 5].  Plaintiff does not allege that he complained to the officers about the pavement burning him.  Nor does he offer any other facts to support a suggestion that officers would have known about the pavement causing injury.  On these facts, Plaintiff has failed to meet his burden to show that the officers violated his clearly established rights by placing him on the hot pavement.

Plaintiff's other generalized allegations regarding the officers' use of force in arresting Plaintiff are similarly insufficient to overcome the Officer Defendants' assertion of qualified immunity.  In addition to holding him down on hot pavement, Plaintiff alleges that the officers pulled him through the window of his car and slammed him on the ground, resulting in Plaintiff sustaining a neck and back injury [ECF No. 34 p. 5].  Although slamming an arrestee can sometimes constitute excessive force in violation of the Fourth Amendment, *see Ingram*, 30 F.4th at 1251–54 (reversing dismissal of excessive force claim where officers slammed an already-searched and non-resisting detainee to the ground in a head-first manner, causing detainee to sustain a serious neck injury), the particular facts alleged here—following two opportunities to amend—do not reach that threshold.  *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (instructing courts "not to define clearly established law at a high level of generality' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced" (internal quotation marks omitted)).  According to the SAC, Plaintiff reversed his car away after being ordered to open the door and then proceeded to drive across county lines from Hollywood, Florida, to Miami, Florida, where he pulled over.  At that point, the officers used force

to remove Plaintiff from the vehicle once he stopped his car and restrained Plaintiff. Plaintiff does not cite any authority which would show that the officers acted unreasonably in violation of Plaintiff's constitutional rights under the specific circumstances presented. And, as the Supreme Court has instructed, "'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Saunders*, 766 F.3d at 1269 (brackets in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Neither does the application of *de minimis* force, without more, support a claim for excessive force in violation of the Fourth Amendment. *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013). Plaintiff has therefore failed to meet his burden, after ample leave to amend, to establish that the Officer Defendants are not entitled to qualified immunity on Plaintiff's excessive force claim in Count II [ECF Nos. 23, 34, 44].

C.  **Any Unlawful Arrest Claim Fails as a Matter of Law**

Even if Count II did allege an unlawful arrest claim—it does not—such a claim would fail as a matter of law because Plaintiff was not seized within the meaning of the Fourth Amendment when one of the officers pointed a gun at Plaintiff and instructed him to open the car door. A person is "seized" within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Absent physical force, a seizure requires both a show of authority and "submission to [that] assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). A showing of authority can include actions such as an officer blocking a citizen's path, requesting identification, the language and tone of the police officer, and the officer's brandishing of a weapon. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). The key inquiry is whether the individual submitted to that show of authority. *See United States v. Dolomon*, 569

F. App'x 889, 892–93 (11th Cir. 2014) (determining that a criminal defendant was not seized when officers attempted to block the defendant's truck with their vehicles and an officer drew his firearm because the defendant did not submit to that show of authority and instead placed his truck in reverse, striking an officer's vehicle, and fled the scene).

Here, although one of the officers made a show of authority by drawing his firearm and instructing Plaintiff to open the car door, Plaintiff did not submit to that authority and fled the parking lot, driving from Hollywood to Miami and pulling over only after that chase [ECF No. 34 p. 2 (alleging that he reversed his car and fled)]. Accordingly, the officers' actions at the convenience store amounted, at most, to an attempted seizure. Thus, even if Count II of the SAC did attempt to make out an unlawful arrest claim for the initial interaction between Plaintiff and the Officer Defendants, it would fail on the facts alleged because there was no seizure at that juncture. The first, and only, seizure in this case occurred after Plaintiff led officers on a high-speed chase across county lines and Plaintiff finally pulled his car over. Accordingly, Plaintiff could not make out any unlawful arrest claim based on any purported arrest in the convenience store parking lot.

**D.     The Court Would Be Required to Abstain from Hearing an Unlawful Arrest Claim**

Pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), in the absence of "extraordinary circumstances[,] a federal court must abstain from deciding issues implicated in an ongoing criminal proceeding in state court." *Thompson v. Wainwright*, 714 F.2d 1495, 1503 (11th Cir. 1983). Application of the *Younger* abstention doctrine can be raised sua sponte. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) (noting that "abstention may be raised by the [district] court [s]ua sponte"); *Boyd v. Georgia*, 512 F. App'x 915, 916 (11th Cir. 2013) (affirming district court's sua sponte dismissal under *Younger*). Courts should consider three factors in determining whether

14

to abstain from hearing a case in accordance with *Younger*: (1) whether there is an ongoing state judicial proceeding; (2) whether the federal proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. *31 Foster Child. v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  All three factors weigh in favor of abstention for any unlawful arrest claim here.  Plaintiff is currently awaiting charges—and has failed to appear after tampering with his monitor—for the same actions that would underly any unlawful arrest claim. *See generally State of Florida v. Theodore K. Griffin*, Case No. 18010595CF10A (Fla. Broward County Ct.).  Any federal determination that this arrest is unlawful would implicate Florida's interest in prosecuting Plaintiff, and Plaintiff can challenge the constitutionality of his arrest in his criminal case.  *Younger* abstention applies.

## II.     Count III – False Imprisonment

In the Motion to Dismiss, Defendants argue that Count III is a shotgun pleading because it lumps a state law false imprisonment claim and a constitutional false imprisonment claim under the same count [ECF No. 64 pp. 11–12].  Although the Report did not resolve this issue, the Court concludes that Count III is not a shotgun pleading and that Count III alleges a false imprisonment claim in violation of the Fourth Amendment only [ECF No. 34 ¶ 8 (alleging that "Defendants Miami-Dade County, Broward County, Hollywood Police Department, Miami Dade Police Department, Officers Thomas McGuire and Kern Dieudonne held the plaintiff on a no bond warrant . . . from August 24, 2018 until August 30, 2018 [] depriv[ing] [Plaintiff] of a judicial determination of probable cause **secured under the Fourth Amendment to the Constitution of the United States** . . ." (emphasis added)).

As the Report correctly notes, the Supreme Court has made clear the Fourth Amendment is violated when an individual is detained for a period exceeding 48-hours without a probable cause hearing. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 58–59 (1991). *See also United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020) *cert. denied sub nom. Palacios-Solis v. United States*, 141 S. Ct. 162 (2020), *and cert. denied sub nom. Guagua-Alcaron v. United States*, 141 S. Ct. 814 (2020) ("[W]hen a [judicial] probable cause determination does not happen within 48 hours, 'the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.'" (quoting *McLaughlin*, 500 U.S. at 57)). Thus, Plaintiff had a clearly established right under the Fourth Amendment to a probable cause hearing within 48-hours of his warrantless arrest, and the SAC plausibly alleges a violation of that right [ECF No. 34 ¶ 8 (alleging that Officers Dieudonne and McGuire, along with other entities, "held [Plaintiff] on a no bond warrant . . . from August 24, 2018, until August 30, 2018, . . . depriv[ing] him of a judicial determination of probable cause")].

While the Court is not unmindful of the generality of Plaintiff's allegations on the particular causal connection between his 6-day detention and the officers' actions [*see* ECF No. 79 p.13], the Court is satisfied at this juncture, accepting the SAC as true, that Plaintiff has alleged a violation of his clearly established federal right to a prompt judicial hearing following his warrantless arrest. It may be true that Officers Dieudonne and McGuire "did not arrest Plaintiff, did not transport Plaintiff, and had no control or authority over where inmates partake in judicial proceedings" [ECF No. 79 p. 12]. But such an argument contradicts the allegations of the SAC [ECF No. 34 ¶ 8] and is therefore more appropriate for summary judgment. Count III against Officers Dieudonne and McGuire survives.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 78] is **ACCEPTED IN PART AND REJECTED IN PART** in accordance with this Order.

2. Defendants' Motion to Dismiss [ECF No. 64] is **GRANTED IN PART AND DENIED IN PART**.

    a. Counts I, II, IV, V, VI, VII, and VIII are **DISMISSED WITH PREJUDICE**. No further repleading is warranted because Plaintiff has been given multiple opportunities to amend his Complaint [ECF Nos. 23, 34, 44].

    b. Defendants Miami Dade County, Broward County, Miami Dade Police Department, Paul Scheel, and Alejandro Falcon are **DISMISSED** from this action and the Clerk **SHALL TERMINATE** them from the docket.

3. Count III against Defendants McGuire and Dieudonne may proceed. Nothing in this Order should be construed as a comment on the merits of that claim.

4. **On or before July 12, 2023**, Defendants McGuire and Dieudonne shall file an answer to Count III of Plaintiff's Second Amended Complaint [ECF No. 34].

5. The Clerk **SHALL MAIL** a copy of this Order to Plaintiff's last known address listed below.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 22nd day of June 2023.

                                                                **AILEEN M. CANNON**
                                                             **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

        Theodore Keith Griffin
        475 N.W. 19th Street
        Miami, Florida 33136
        PRO SE